# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00105-CV

**Zachary Myers and Dart Frog, LLC, Appellants**

**v.**

**Tahitian Village Property Owners Association, Inc.; and
Tahitian Village Architectural Control Committee, Appellees**

### FROM THE 423RD DISTRICT COURT OF BASTROP COUNTY
### NO. 423-7432, THE HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Zachary Myers and Dart Frog, LLC bring this interlocutory appeal from the district court's order denying their request for a temporary injunction in their suit against Tahitian Village Property Owners Association, Inc. and the Tahitian Village Architectural Control Committee for breach of the restrictive covenants governing the Tahitian Village subdivision. We will affirm.

## BACKGROUND

Myers owns a lot in the Tahitian Village subdivision. Dart Frog, a Texas limited liability company that Myers alleged is "one of his companies," owns six lots in the same subdivision. In September 2020, Myers and Dart Frog sued Tahitian Village Property Owners Association (the POA) and the Tahitian Village Architectural Control Committee (the ACC) seeking a declaration that the POA did not have the authority to impose fines related to their

residential construction activities in the subdivision and could not enforce architectural guidelines separate from those contained in the subdivision's restrictive covenants. Myers and Dart Frog also sought a declaration that if the POA had the authority to assess construction related fines, it had to first provide notice and an opportunity to cure the violation. Myers and Dart Frog alleged that the POA breached the Texas Property Code by imposing arbitrary, capricious, and discriminatory fines and breached the subdivision's restrictive covenants by imposing fines and adopting architectural restrictions separate from those contained in the subdivision's restrictive covenants.

In February 2020, Myers and Dart Frog amended their petition to bring a putative class action on behalf of all property owners in the Tahitian Village subdivision. Myers and Dart Frog dropped their claims for declaratory relief and asserted a cause of action against both the POA and the ACC for breach of the subdivision's restrictive covenants. Myers and Dart Frog alleged that the restrictive covenants do not authorize the POA or the ACC to require property owners to comply with any architectural or construction related rules other than those contained in the subdivision's restrictive covenants and that the POA and the ACC breached the restrictive covenants by requiring owners to submit anything other than plans, specifications, and a plat to obtain architectural approval for residential construction in the subdivision. Myers and Dart Frog also alleged that the POA and the ACC breached the subdivision's restrictive covenants by requiring property owners to pay unauthorized assessments, fees, and fines in order to obtain architectural approvals, build improvements, and vote in "community elections." The amended petition also sought a temporary injunction enjoining the POA and ACC from:

- requiring Myers and Dart Frog to pay assessments, fees, or fines apart from admission or use fees for community facilities;

2

● requiring Myers and Dart Frog to submit anything other than plans, specifications, and a plat to obtain ACC review and consideration of architectural submissions; and

● preventing Myers and Dart Frog from voting in community elections on the ground that they had failed to pay assessments, fees, or fines.

After an evidentiary hearing, the district court denied the request for temporary injunctive relief and ordered the parties to mediation. Myers and Dart Frog then perfected this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4) (person may appeal from interlocutory order of district court that refuses a temporary injunction).

## DISCUSSION

At a hearing on a request for a temporary injunction, the only question before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending a trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978); *Gettysburg Homeowners Ass'n, Inc. v. Olson*, 768 S.W.2d 369, 371 (Tex. App.—Houston [14th Dist.] 1989, no writ). The decision to grant or deny a temporary injunction lies in the discretion of the trial court, and the trial court's ruling is subject to reversal only for a clear abuse of discretion. *Texas Health & Human Servs. Comm'n v. Advocates for Patient Access, Inc.*, 399 S.W.3d 615, 629 (Tex. App.—Austin 2013, no pet.). This Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. *Id.* We will reverse the order if the trial court misapplied the law to established facts or if it concluded that the applicant failed to demonstrate a probable injury or a probable right to recover and such conclusion is not reasonably supported by the evidence. *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 106 (Tex. App.—Austin 2003, no pet.).

3

In general, temporary injunctive relief is warranted when a movant shows: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). When an injunction is sought to enforce a restrictive covenant, however, the movant is not required to show proof of irreparable injury. *See Munson v. Milton*, 948 S.W.2d 813, 815 (Tex. App.—San Antonio 1997, pet. denied). Instead, the movant need show only that the defendant intends to do an act that would breach the restrictive covenant. *Id.* Thus, to be entitled to injunctive relief in this case, Myers and Dart Frog had to demonstrate that the POA or the ACC were engaging in conduct that breached the Tahitian Village restrictive covenants.

Myers and Dart Frog argue that the trial court erred in denying the injunction because the POA and the ACC were wrongfully charging assessments and refusing to review their architectural submissions. Myers and Dart Frog claim that these actions were breaches of the restrictive covenants and that, at the hearing on the temporary injunction, they had demonstrated a probable right to recover on the breach of covenants claim, entitling them to injunctive relief to preserve the status quo. Thus, we must determine whether Myers and Dart Frog established a probable right to recover on their breach of covenants claim, which in turn requires that they demonstrated to the trial court that the POA and the ACC have no authority to make any assessments and no authority to require more than building plans, specifications, and a plat before reviewing and deciding whether to approve architectural submissions.

*Authority to make assessments*

Myers and Dart Frog assert that the Tahitian Village restrictive covenants prohibit the POA from making any assessments and that its having done so constitutes a breach of

4

those covenants. According to Myers and Dart Frog, the authority for the POA to make any assessments was revoked when the property owners voted in 1998 to amend the "Agreement of Covenants, Conditions for Tahitian Village" (the Restrictive Covenants) and, as part of the amendment, deleted Article II of the previous version, which provided for the "Assessment of Annual Charge." This amendment, Myers and Dart Frog maintain, stripped the POA of the authority to make assessments of any kind. The POA and the ACC counter that the amendment to the Restrictive Covenants removed the requirement that Tahitian Village property owners pay an annual charge, but that the amendment did not prohibit the POA from making and collecting other types of assessments as permitted by the POA bylaws. The POA points to Article IX, section 9(c) of the POA bylaws, which authorizes the POA to "establish an assessment and its collection as is necessary to maintain the powers, duties, and authority of the [POA]."

Before the court at the hearing on the temporary injunction were the Tahitian Village subdivision's dedicatory instruments, including the Restrictive Covenants, the Certificate of Formation, and the HOA's Bylaws. Restrictive covenants are interpreted according to the rules that govern contract construction. *Air Park—Dallas Zoning Comm. v. Crow Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 909 (Tex. App.—Dallas 2003, no pet.). In construing the language of the restrictive covenants, our task is to determine the intent of its framers. *See Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987). Whether the relevant language is ambiguous is a question of law. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Covenants, like contracts, are unambiguous as a matter of law if they can be given a definite or certain legal meaning. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). "No construction, no matter how liberal, can construe a property restriction into existence

when the covenant is silent as to that limitation." *Tarr v. Timberwood Park Owners' Ass'n*, 556 S.W.3d 274, 285 (Tex. 2018).

As Myers and Dart Frog point out, the Restrictive Covenants, as amended, deleted a provision that required property owners to pay an annual charge to the POA. The Restrictive Covenants, however, are silent as to the POA's power to make other assessments. Consequently, the Restrictive Covenants do not prohibit *all* assessments; the amendment simply removed the provision authorizing the POA to impose an annual charge on the subdivision's property owners.

The POA's bylaws, by contrast, expressly address assessments and authorize the POA to make an assessment "as is necessary to maintain [its] powers, duties, and authority." An example of such an assessment is the transfer fee the POA assesses when a property changes ownership. The bylaws are not subordinate documents to the Restrictive Covenants, nor are they inconsistent with the terms of the Restrictive Covenants, which do not prohibit the POA from making assessments. *See* Tex. Prop. Code § 202.001 (providing that "dedicatory instruments" include "restrictive covenants, bylaws, or similar instrument governing the administration or operation of a property owners' association"). While Myers and Dart Frog may take issue with a particular assessment made by the POA and may argue that such assessment is improper or unauthorized, they have not demonstrated that the POA is not permitted to make any assessments at all.

Based on the documents and evidence submitted to the trial court, it could reasonably have determined that the amendment to the Restrictive Covenants that removed the POA's authority to charge residents an annual fee did not foreclose the POA from making other assessments as permitted by the Bylaws, such as the "transfer fee" or fines for violations of subdivision rules and regulations. The court could have determined that, based on the record

6

before it, the amendment's purpose was limited to eliminating an annual charge or assessment that each homeowner had been required to pay and was not intended to revoke the POA's authority to make individual, case-by-case assessments as necessary to carry out its duties. We conclude that the trial court did not abuse its discretion in determining that Myers and Dart Frog failed to demonstrate that they had a probable right to recover on their claim that the POA had no authority to impose or collect any type of assessment from owners of property in the Tahitian Village subdivision and that doing so was a breach of the Restrictive Covenants.[1]

*Information required for ACC consideration*

We next consider whether Myers and Dart Frog established a probable right to recover on their claim that the ACC's requiring anything other than building plans, specifications, and a plat before reviewing and deciding whether to approve architectural submissions constituted a breach of the Restrictive Covenants. Myers and Dart Frog assert that because the Restrictive Covenants contain a covenant requiring that a property owner submit plans, specifications, and a plat, the POA and the ACC are not authorized to require submission of any other type of additional documentation before considering and approving architectural submissions. The Restrictive Covenants, however, do not prohibit the ACC from requiring additional information and documentation with architectural submissions. In fact, the Restrictive Covenants impose a duty on the ACC to prevent the use of any lot in a way that would "violate

---

[1] Myers and Dart Frog assert that they are entitled to an injunction preventing the POA from not permitting them to vote in community elections based on their failure to pay fines. Myers and Dart Frog maintain that because the POA is not authorized to make any assessments, failure to pay assessments cannot serve as a basis for denying them the right to vote. Because Myers and Dart Frog failed to establish that the POA has no authority to make assessments, the trial court did not abuse its discretion in denying their request for injunctive relief related to voting.

the laws of the local, State or Federal governments." The trial court could have determined, based on the record before it, that the plans, specifications, and a plat would not provide sufficient information to the ACC to carry out its duty of ensuring that a proposed project did in fact comply with local, state, and federal laws. Thus, the trial court did not abuse its discretion by finding that Myers and Dart Frog were not entitled to injunctive relief prohibiting the POA or the ACC from requiring information beyond the plans, specifications, and a plat. Myers and Dart Frog may at trial present evidence that the specific additional information the POA and the ACC demanded from them was in excess of its authority or otherwise improper, but the issue in this appeal is whether Myers and Dart Frog established a probable right to recover on their assertion that requiring the submission of additional information per se constituted a breach of the Restrictive Covenants. We conclude that the trial court's denial of the temporary injunctive relief sought was not an abuse of its discretion.

## CONCLUSION

Having concluded that the trial court did not abuse its discretion in denying the temporary injunctive relief Myers and Dart Frog requested, we affirm the trial court's order.

_____
Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana, and Kelly

Affirmed

Filed: January 6, 2022

8